### HENRY PEARSON *vs.* NICHOLAS MASON.

Suffolk. Nov. 12, 1875.—March 4, 1876. ENDICOTT & LORD, JJ., absent.

It is no ground of exception that instructions requested are not given in the form requested, if they are given in substance.

Upon a contract by the defendant to purchase certain stock then owned by the plaintiff, at his request, for an agreed price, and a tender of the stock before an action is brought, and a renewal of the tender at the trial, the plaintiff is entitled to recover as his damages the whole price that the defendant agreed to pay.

A. agreed with B. that if B. would find anybody that would trade with A. for certain land owned by him, he would pay B. $500. B. accordingly introduced to A. a person with whom A. made a written agreement for the sale of the property. *Held,* that, upon the execution of this agreement, B. became entitled to his commission, though the sale was never completed.

CONTRACT. The first and third counts of the declaration alleged that the plaintiff sold to the defendant a certain piece of land on Joy Street in Somerville, and ten shares of the capital stock of the American Steam Safe Co., and received in payment therefor from the defendant four hundred shares of the capital stock of the Haverhill Lime Co., of which the par value was $5 per share; that the defendant at the time, and in consideration of this sale, agreed to buy the four hundred shares of the Haverhill Lime Co., and, upon request by the plaintiff, pay him therefor $2.50 per share; that the plaintiff had often offered to the defendant to sell and assign the shares to him, and had demanded the agreed payment therefor; that the defendant had neglected to pay the same, and owed the plaintiff $1000 and interest.

The second and fourth counts alleged that the defendant agreed with the plaintiff, that if the plaintiff would introduce the de-

fendant to any party who would trade with him for certain mill property in Haverhill, New Hampshire, the defendant would pay the plaintiff the sum of $500; that the plaintiff did introduce to him a party who agreed to trade and did trade with him for the said mill property; that the defendant owed the plaintiff the sum of $500, which, though requested, he had failed to pay.

Answer, a general denial.

Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff testified that he was to give the defendant the house on Joy Street and ten shares of the American Steam Safe Co. stock, for four hundred shares of the Haverhill Lime Co. stock, and that the defendant said, if I would trade with him for the stock, that he would take it back at any time and give me fifty cents on a dollar for it; that this was the last of October, 1869, that he was to pay interest on the house up to November 1, 1869; that he never knew any one in the trade but the defendant, and never heard or knew of any agency in the matter; that he delivered to the defendant a deed of the house in question and ten shares of the American Steam Safe Co. stock, and received from the defendant the four hundred shares of the Haverhill Lime Co. stock; that he subsequently called upon the defendant to give him the fifty cents on a dollar for the stock; that the par value of the stock, upon which the fifty per cent. was to be paid, at the time of the trade was agreed to be five dollars, and that the defendant refused to comply with this request thus made. The plaintiff also put in testimony in addition to his own, tending to sustain his own testimony. The plaintiff further testified that, when he called upon the defendant to give him the fifty per cent., he took the stock out of his pocket and showed it to him, and laid it on the table, the stock being indorsed in blank. The plaintiff at the trial offered to assign and transfer the stock to the defendant.

The defendant testified that in either January, February or March, 1869, the plaintiff wanted him to find some one with whom he could make an exchange of property and get some Haverhill Lime Co. stock, the defendant being agent of the company, or, that the defendant might procure him some, and he, the plaintiff, would pay him for his trouble; that he immediately set

about to procure said Lime Co. stock, and, on November 5, wrote to the plaintiff that he had got " the stock fixed for him," and in order to do so had taken $575 worth of the stock, part of which was for his commission, from one Ransom ; that he had a commission from both sides ; that the papers were passed November 17, 1869, when the plaintiff gave him the following as his commission :

" Boston, Nov. 17, 1869.  For value received I promise to transfer to Nicholas Mason twenty shares in the Haverhill Lime Co. stock, when said Mason may call for the same, amounting to $100 at $5 per share.  Henry Pearson."

The defendant also testified that he never promised to pay the plaintiff fifty per cent. of the par value of said stock, and denied that any such statements were made as the witnesses for the plaintiff had testified to.  He further offered in evidence a paper, a copy of which is printed in the margin,* which he contended was the agreement which was entered into between him and the plaintiff, but which the plaintiff denied.  This paper was produced by the plaintiff at the call of the defendant.

The plaintiff further testified that in 1871 the defendant was in his office and " said if I would find anybody that would trade with him for the mill and land, that he would pay me $500 in cash, as soon as the agreement was made between him and the parties ; " and that he found one Woodbury, and introduced him to the defendant in his office ; and that they (the defendant and Woodbury) made an agreement to exchange property in writing, which was produced, dated January 13, 1872.

The testimony as to whether the defendant acted as the agent of the plaintiff or of other parties, and, if of other parties, whether the plaintiff knew it or not, in the exchange of property referred to in the first and third counts, was conflicting.  The

---

* " Octo. 29, Rec'd of H. Pearson 10 shares of Steam Safe Company's stock for Charles Martin, and said Martin is to transfer to said Pearson $2000 hundred [*sic*] dollars worth of Haverhill Lime Company stock, for said stock, and twenty-two hundred dollars more for a house in Somerville, on Joy Street, and Martin is to collect rent and Pearson is to pay int. to Nov. 12 on said house,  Charles Martin,
" By Nicholas Mason,
Agt. for the **Parties.**"

defendant requested the judge to rule "that if the jury find that the defendant was acting as agent, and that the plaintiff knew the same, the plaintiff cannot recover on the first and third counts; for the contract, whatever it may have been, was the contract of the principal and not the agent, for the agent is not liable upon any agreement or contract into which he enters merely in his representative capacity."

The judge refused so to rule, but ruled "that if the jury find that the plaintiff exchanged with the defendant his house in Somerville and ten shares of the American Steam Safe Co. stock for four hundred shares of the Haverhill Lime Co. stock, and in consideration thereof, and as an inducement to the exchange, the defendant promised him that he would take said stock at any time thereafter, and pay him therefor $2.50 per share, then it is of no consequence whether Mason was a principal or an agent in effecting the exchange, and the plaintiff is entitled to recover. But that if the jury found, as a fact, that the contract was made in the way in which the defendant testified that it was, that is, that he was acting as agent for the plaintiff in disposing of this house and procuring for him this stock, it was a totally different contract from the one the plaintiff declared on, and their verdict would be, on this part of the case, for the defendant."

The defendant also asked the court to instruct the jury "that the plaintiff cannot recover on the 1st and 3d counts of his declaration, it not being alleged that the defendant accepted said stock, and there being no proof that he did, but, on the contrary, that he did not. The plaintiff's remedy should be by an action for breach of contract, wherein the measure of his damages would be the actual injuries he sustained, being the difference between the contract price and the value of the stock at the time of the tender and refusal."

The judge refused so to instruct the jury, but instructed them "that if the plaintiff offered to sell and assign the shares to the defendant, and had the present ability to do so, and the defendant at the time of the offer declined to comply with his contract to take them, and made no request for an actual production and transfer of the certificates, and no objection that a transfer of the stock was not actually executed, and a certificate of the same offered to him, it is a sufficient tender of the stock on the par*

of the plaintiff; and, if at the trial he renews the offer to assign and transfer the stock to the defendant, he is entitled to recover as his damages the whole price which the defendant agreed to pay for the stock, and not simply the difference between that sum and the value, of the stock."

The defendant further requested the judge to instruct the jury " that a real estate broker is not entitled to his commission, as a matter of law, until the trade is completed and papers passed; that the mere signing an agreement to exchange property, which is never carried out, does not entitle a broker, who introduces the parties, to his commission."

The judge stated that this might be true as a general rule, but refused so to instruct the jury in this case, and instructed them that it was no matter in this case whether the agreement was complied with by the purchaser or not; that, if the contract between them was as the plaintiff had testified to, that is, if he was simply to introduce to the defendant a purchaser with whom the defendant was to make the trade, and he did so introduce him, and an agreement was made between them which bound the purchaser, the plaintiff's work was performed, and he was entitled to his commission of $500.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. H. Chellis*, for the defendant.

*R. Stone, Jr.*, for the plaintiff.

AMES, J. We see no ground upon which these exceptions can be sustained. Upon the first and third counts of the declaration, the evidence was conflicting as to the question whether the defendant's contract to take back and pay for the stock in the Haverhill Lime Company was made by him personally and on his own account, or whether in making it he was acting, and was known by the plaintiff to be acting, merely as the agent of another person. This was purely a question of fact, and was submitted to the jury with instructions to which we see no valid objection. The presiding judge did not adopt the defendant's language, but the instruction given included all that was suggested in his request.

With regard to the ruling given in answer to the second prayer for instructions, it was strictly correct, and in conformity to the

decision of this court in *Thorndike* v. *Locke*, 98 Mass. 340, and the earlier case of *Thompson* v. *Alger*, 12 Met. 428. The stock had properly been tendered to the defendant before suit brought, and the tender was renewed at the trial.

In the defendant's third prayer for instructions, the general rule as to a broker's right to charge commissions may have been correctly stated, but the plaintiff's claim rested upon an alleged special contract upon the subject of his compensation, and the jury were correctly instructed that, if such contract were proved, he was entitled to the commission as agreed.

*Exceptions overruled.*